IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

**ELLEN JOHNSTON,** **PLAINTIFF,**

**VS.** **CIVIL ACTION NO. 2:07CV042-P-B**

**ONE AMERICA PRODUCTIONS, INC.;**
**TWENTIETH-CENTURY FOX FILM**
**CORPORATION; JOHN DOES 1 AND 2,** **DEFENDANTS.**

## MEMORANDUM OPINION

These matters come before the court upon the defendants' motion to dismiss [7] the plaintiff's claims for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and Defendants' motion to strike [14] the plaintiff's exhibits to their response to the defendants' motion to dismiss. After due consideration of the motions and the responses filed thereto, the court is prepared to rule.

### I. FACTUAL BACKGROUND

On March 20, 2007 Ellen Johnston filed her Complaint against One America Productions, Inc., Twentieth-Century Fox Film Corporation, Everyman Pictures[1], and John Does 1 and 2 seeking compensatory and punitive damages for invasion of privacy and gross negligence in response to the featuring of her likeness for approximately three seconds in the nationally distributed motion picture *Borat* released in theaters across North America and Europe in 2006 and released in DVD format in 2007.

The film *Borat* involves the actor Sacha Baron Cohen portraying a fictional character named Borat Sagdiyev who lives in Kazakhstan and who is asked by the Kazakhstani government to travel to the United States to film a documentary regarding cultural aspects of the United States in order

---

[1] The plaintiff voluntarily dismissed Defendant Everyman Pictures on June 1, 2007.

1

to improve Kazakhstan's culture. Borat and his producer travel to America and film a series of encounters with various people and organizations such as a group of feminists, a few notable politicians, a rodeo, a school of Southern manners, etc. The viewer of the film is aware that although the character Borat and his producer are actors, almost everyone they meet are not actors and are unaware that Borat is a fictional character, believing he is in fact from Kazakhstan filming a documentary on American culture. Though the original mission of the character Borat is to film a cultural documentary, he discovers the actress Pamela Anderson while watching television in his hotel room and consequently vows to travel to California to marry her.

The scene at issue in this case is near the end of the movie on Borat's way to California when he stops at an actual Pentecostal camp meeting held in Clarksdale, Mississippi. The scene begins with excerpts from actual speeches given by Hon. Chip W. Pickering, Jr., a Mississippi member of the U.S. House of Representatives, and Chief Justice James W. Smith, Jr. from the Mississippi Supreme Court. At this point in the movie, Borat is in despair after having discovered that Pamela Anderson is not a virgin and he seeks redemption at the camp meeting during which he acts as if he is converted by the minister and begins speaking in tongues along with other Pentecostals doing the same. While Borat appears to be experiencing this religious conversion, several members of the camp meeting, including the plaintiff, are shown in the film raising their arms in praise to God for Borat's conversion.

In its two pages of text, the Complaint appears to assert four causes of action: (1) invasion of privacy for filming the plaintiff without her consent on July 10, 2005; (2) false light invasion of privacy by portraying the plaintiff in a way suggesting she knowingly participated in a mocking of her Pentecostal religion; (3) release of the film without the plaintiff's permission because she did not

sign a written release to appear in the film *Borat*, she was led to believe that the character *Borat* and his film crew were filming a "religious documentary" to be shown in a foreign country, and she was not told the true nature of the character Borat and the resulting film; and (4) gross negligence.

The defendants filed the instant motion to dismiss the plaintiff's Complaint for failure to state a claim pursuant to Fed. R. Civ. P 12(b)(6), arguing that as a matter of law, the plaintiff cannot recover under any of the four sub-torts under the rubric of "invasion of privacy," including (1) intrusion upon seclusion, (2) appropriation of another's identity for an unpermitted use, (3) public disclosure of private facts, and (4) holding another to the public eye in a false light. The defendants argue that in any event, the film is protected by the First Amendment. Attached to their motion to dismiss is a DVD copy of the movie *Borat*, a transcript of the church camp scene in which the plaintiff was featured, and copies of a *World Christian Encyclopedia* (Oxford University Press 1982) article regarding Pentecostals and an article regarding same from *The Oxford History of Christian Worship* (Oxford University Press 2006).

In opposition, the plaintiff argues that she does state a claim for invasion of privacy both in the misappropriation of her likeness for commercial gain and the portrayal of her in a false light. She also notes that she has filed a motion to amend the complaint to include a claim for intentional infliction of emotional distress. The plaintiff also urges that the defendants' motion to dismiss should be converted to one for summary judgment since the defendants' attached matters outside the pleadings. In that regard, the plaintiffs attached several documents to their response to the motion to dismiss including three affidavits, excerpts from a book titled *Clearance and Copyright: Everything the Independent Filmmaker Needs to Know*, and a transcribed excerpt of an interview with Sacha Brown Cohen by National Public Radio.

The defendants filed a motion to strike the plaintiff's exhibits, arguing that (1) their own attachments to their motion to dismiss are not outside the pleadings because they are referenced in and are central to the claims in the Complaint; (2) the encyclopedia articles involving Pentecostal practices are matters of judicial notice; and (3) the plaintiff cannot convert a motion to dismiss into one for summary judgment by her own attachment of matters outside the pleadings.

## II. DISCUSSION

### A. Defendants Motion to Strike

Fed. R. Civ. P. 12(b) provides in pertinent part:

> If, on a motion asserting the defense numbered (6) to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Thus, if the court considers matters outside the pleadings in ruling upon a Rule 12(b)(6) motion to dismiss, the court must convert the motion to one for summary judgment. *Tuley v. Heyd*, 482 F.3d 590, 592 (5th Cir. 1973). However, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

The court concludes that a copy of the *Borat* DVD is not a matter outside the pleadings since the Complaint directly refers to the movie and it is central to her claim. Using its discretion provided by Rule 12(b), the court declines to consider the defendants' articles regarding Pentecostal practices at this juncture. Therefore, the court need not convert the defendants motion to dismiss into one for

4

summary judgment. Furthermore, the court exercises its discretion in excluding the plaintiff's exhibits to their response to the defendants' motion to dismiss from consideration at this time. Therefore, the defendants' motion to strike should be granted and the court will consider the defendants' motion to dismiss under Rule 12(b)(6) standards.

**B. 12(b)(6) Standards**

Pursuant to Fed. R. Civ. P. 12(b)(6) a defendant may file a motion to dismiss a plaintiff's claim or claims for failure to state a claim upon which relief can be granted. The traditional test for ruling upon a Rule 12(b)(6) motion, as announced in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), is "in appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." However, the U.S. Supreme Court in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1968-69 (2007) recently "retired" that test. In this regard, the Court in *Twombly* wrote:

> *Conley*'s "no set of facts" language has been questioned, criticized, and explained away long enough. To be fair to the *Conley* Court, the passage should be understood in light of the opinion's preceding summary of the complaint's concrete allegations, which the Court quite reasonably understood as amply stating a claim for relief. But the passage so often quoted fails to mention this understanding on the part of the Court, and after puzzling the profession for 50 years, **this famous observation has earned its retirement**. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: **once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.** See *Sanjuan*, 40 F.3d, at 251 (once a claim for relief has been stated, a plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint")

127 S.Ct. at 1969. (emphasis added).

5

The Court in *Twombly* formulated the proper standard in the following way:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, [and] "the pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action", on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

127 S.Ct. 1964-65. (some citations omitted for clarity).

Thus, the court must determine whether the defendants have established that the plaintiff's factual allegations in her Complaint, taken as true, are enough to raise a right to relief above the speculation level.

Motions to dismiss are viewed with disfavor and are rarely granted. *Shipp v. McMahon*, 199 F.3d 256, 260 (5th Cir.2000). In deciding a motion to dismiss under Rule 12(b)(6), the district court accepts as true those well-pleaded factual allegations in the complaint. *C.C. Port, Ltd. v. Davis-Penn Mortgage Co.*, 61 F.3d 288, 289 (5th Cir.1995). The complaint must be liberally construed, with all reasonable inferences drawn in the light most favorable to the plaintiff. *Sloan v. Sharp*, 157 F.3d 980, 982 (5th Cir.1998). "However, [the court] will not strain to find inferences favorable to the plaintiff[]." *Southland Securities Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir.2004)

**C. Analysis**

"Mississippi has by implication judicially recognized the common law right to privacy. Although the law of privacy has developed along divergent lines and amid a welter of confusing

6

judicial pronouncements, four distinct theories of the cause of action have been generally recognized: (1) the intentional intrusion upon the solitude or seclusion of another; (2) the appropriation of another's identity for an unpermitted use; (3) the public disclosure of private facts; and (4) holding another to the public eye in a false light." *Deaton v. Delta Democrat Publishing, Co.*, 326 So.2d 471, 473 (Miss. 1976) (citing Section 652E of the Restatement (Second) of Torts (1976)) (internal citations omitted).

After considering the Complaint and the plaintiff's brief in response to the motion to dismiss, it appears that the plaintiff asserts two invasion of privacy claims: the appropriation of another's identity for an unpermitted use and holding another to the public eye in a false light. It does not appear, however, that the plaintiff asserts claims for intrusion upon seclusion or public disclosure of private facts. In any event, the defendants have demonstrated that the plaintiff has not stated a claim for either of the latter invasion of privacy claims since (1) with regard to intrusion on seclusion it is undisputed that the plaintiff was attending a public religious meeting and did not expect seclusion; and (2) with regard to the public disclosure of private facts, it is undisputed that it was not a private fact that the plaintiff attended the public meeting.

The court will consider the other two invasion of privacy claims in turn.

**1. False Light**

According to the Fifth Circuit Court of Appeals, "Mississippi has never expressly or impliedly adopted the 'false light' tort or allowed recovery in a case of this kind on other than a defamation theory. We accordingly decline to adopt for Mississippi Mitchell's false light theory."*Mitchell v. Random House, Inc.*, 865 F.2d 664, 672 (5th Cir. (Miss.) 1989). After recognizing the discussion of all four invasion of privacy torts in *Deaton*, the Mississippi Supreme Court in

*Prescott v. Bay St. Louis Newspapers, Inc.*, 497 So.2d 77, 79 (Miss. 1986) declined to explicitly adopt the false light form of invasion of privacy, writing: "It is not important for us to delineate our position regarding recognition of false light here because we are confident that in any event Prescott has failed to present a case as a matter of law."

However, the Mississippi Supreme Court in *Cook v. Mardi Gras-Casino Corp.*, 697 So.2d 378 (Miss. 1997), decided eight years after the Fifth Circuit's decision in *Mitchell*, implicitly recognized the tort of false light invasion of privacy, writing:

> In *Prescott v. Bay St. Louis Newspapers, Inc.*, 497 So.2d 77, 79 (Miss.1986)**, this Court implicitly recognized a claim of Tortious Invasion of Privacy through Publicity Placing a Person in a False Light**. Therein, the Court stated that the elements of the claim are (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

697 So.2d at 382-83 (emphasis added).

Therefore, this court concludes that Mississippi has adequately recognized the tort of false light invasion of privacy. This leaves the question of whether the plaintiff has asserted adequate facts, arising above speculation, to support the two elements of false light to a degree sufficient to survive the defendants' Rule 12(b)(6) motion.

As the Mississippi Supreme Court and the Fifth Circuit have done in matters involving invasion of privacy torts, this court will consult Section 652E of the Restatement (Second) of Torts regarding the false light theory. In addition to the elements quoted from *Cook* above, there are several statements contained in the comments to Section 652E that are particularly relevant to this case.

Comment *a* states that "it is essential to the rule stated in this Section that the matter

published concerning the plaintiff is not true." Regarding false light's relation to defamation, comment *b* states: "It is not, however, necessary to an action for invasion of privacy that the plaintiff be defamed. It is enough that he is given unreasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false, and so is placed before the public in a false position."

Comment *c*, regarding what is highly offensive to a reasonable person, states in pertinent part:

> The rule stated in this Section applies only when the publicity given to the plaintiff has placed him in a false light before the public, of a kind that would be highly offensive to a reasonable person. In other words, **it applies only when the defendant knows that the plaintiff, as a reasonable man, would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity**. ... It is only when there is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position, that there is a cause of action for invasion of privacy.

Comment *c* to § 652E of the Restatement (Second) of Torts (1976) (emphasis added).

Illustration number 9 to comment *c* states:

> A is the pilot of an airplane flying across the Pacific. The plane develops motor trouble, and A succeeds in landing it after harrowing hours in the air. B Company broadcasts over television a dramatization of the flight, which enacts it in most respects in an accurate manner. Included in the broadcast, however, are scenes, known to B to be false, in which an actor representing A is shown as praying, reassuring passengers, and otherwise conducting himself in a fictitious manner that does not defame him or in any way reflect upon him. **Whether this is an invasion of A's privacy depends upon whether it is found by the jury that the scenes would be highly objectionable to a reasonable man in A's position**.

*Id*. (emphasis added).

The defendants argue that the plaintiff was not portrayed in a false light because it is true that she voluntarily raised her hands religious praise in response to the character Borat's apparent

9

conversion to her religion. The plaintiff counters, however, that the issue is not whether she does and did raise her hands in praise upon the conversion of another; rather, the issue is whether she is reasonable to believe that viewers of the movie would question whether she knowingly and voluntarily participated in a mocking of her religion.

Considering the elements of the tort of false light invasion of privacy and the Restatement comments quoted above, the court concludes that in light of the standards for Rule 12(b)(6) motions to dismiss, it is beyond mere speculation that there are jury questions of (1) whether the Pentecostal scene portraying the plaintiff waiving her arms in religious praise in response to Borat's apparent conversion would be highly objectionable to a reasonable person in the plaintiff's position, *See* Illustration 9 to comment *c, supra,* such that a person in the plaintiff's position would believe others would believe she willingly participated in a mocking of her religion; and (2) whether "the defendant [knew] that the plaintiff, as a reasonable [person], would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity," *See* comment *c*, *supra*.

## 2. Misappropriation of Name or Likeness for Commercial Gain

"There is no dispute as to the existence of the cause [of action for the "appropriation of another's identity for an unpermitted use"] in Mississippi." *Candebat v. Flanagan*, 487 So.2d 207, 210 (Miss. 1986); *Harbin v. Jennings*, 734 So.2d 269, 272 (Miss. Ct. App. 1999) ("Mississippi recognizes the tort of intentional invasion of privacy. ... One of the classic forms of such invasion of privacy is the appropriation, without consent, of the likeness of another for use in a commercial enterprise."). The Courts in *Deaton*, *Candebat*, and *Harbin* all recognized the existence of the invasion of privacy sub-tort "appropriation of another's identity for an unpermitted use," citing Section 652C of the Restatement (Second) of Torts (1976).

10

The defendants argue that the Fifth Circuit's decision in *Matthews v. Wozencraft*, 15 F.3d 432 (5th Cir. (Tex.) 1994) stands for the proposition that a misappropriation of a person's name or likeness claim must involve commercial advertising. In *Matthews*, a former undercover narcotics officer filed diversity suit alleging breach of contract, division of marital assets, and misappropriation/invasion of privacy against his former wife and partner, and misappropriation and invasion of privacy against the publisher of his wife's book, a movie studio, and another. The holdings in *Matthews*, however, were based on a Texas statute regarding misappropriation. Mississippi has no such statute. In any event, the Fifth Circuit in *Matthews* recognized comment b to Section 652C of the Restatement, observing that "[a]ppropriation of a name or likeness generally becomes actionable when used 'to advertise the defendant's business or product, **or for some similar commercial purpose**.'" *Id*. at 437 (emphasis added). Furthermore, although the Fifth Circuit concluded that the novel in *Matthews* was protected by the First Amendment, they so concluded because "Matthews became a public figure through his activities." *Id*. at 440.

A review of Section 652C of the Restatement (Second) of Torts, the comments thereto, and Mississippi law regarding same reveals no requirement that a misappropriation of a person's name or likeness claim must involve commercial advertising.

According to Section 652C, "One who appropriates to **his own use or benefit** the name or likeness of another is subject to liability to the other for invasion of his privacy," is liable for the tort of misappropriating a persons name or likeness for an unpermitted use. (emphasis added). Comment a to Section 652C states that "[t]he interest protected by the rule ... is the interest of the individual in the exclusive use of his own identity, in so far as it is represented by his name or likeness, and in so far as the use may be of benefit to him or to others." Comment b states:

> *b. How invaded.* The common form of invasion of privacy under the rule here stated is the appropriation and use of the plaintiff's name or likeness to advertise the defendant's business or product, **or for some similar commercial purpose**. Apart from statute, however, the rule stated is not limited to commercial appropriation. It applies also when the defendant makes use of the plaintiff's name or likeness for his own purposes and benefit, even though the use is not a commercial one, and even though the benefit sought to be obtained is not a pecuniary one. Statutes in some states have, however, limited the liability to commercial uses of the name or likeness.

(emphasis added). Comment c states in pertinent part that "[i]n order that there may be liability under the rule stated in this Section, **the defendant must have appropriated to his own use or benefit** the reputation, prestige, social or commercial standing, public interest **or other value of the plaintiff's name or likeness**." (emphasis added).

Nothing in Section 652C or the comments thereto confine a claim for misappropriation of a person's name or likeness to commercial advertising. As emphasized above, as long as the defendant gains some benefit, even if not commercial, from whatever value is associated with a person's name or likeness, the tort will lie.

Although the decision in *Candebat* involved an insurance company that used two insured's names and circumstances surrounding their car wreck without permission for sales purposes, the Mississippi Supreme Court in *Candebat* did not confine the tort of misappropriation of name or likeness to commercial advertising. In fact, the Court upheld the validity of the plaintiffs' language seeking liability for misappropriation of the plaintiff's name or likeness "'for the **commercial advantage** of the corporate defendant ... to further the mercantile goals of aggrandize and enrich [said] defendant ... without the knowledge or express consent of the Candebats.'" 487 So.2d at 210 (emphasis added). The Court concluded that "[t]here is no dispute as to the existence of the cause in Mississippi." *Id*.

12

Similarly, the Court of Appeals in *Harbin* did not require the misappropriation to come in the form of commercial advertising. In *Harbin*, a High School student sued a photographer and picture frame company, alleging invasion of privacy based on use of photograph without permission. The Mississippi Court of Appeals wrote: "Mississippi recognizes the tort of intentional invasion of privacy. ... One of the classic forms of such invasion of privacy is the appropriation, without consent, of the likeness of another **for use in a commercial enterprise**." 734 So.2d at 272. (emphasis added). "The use of Harbin's photograph in thousands of picture frames to be widely distributed and displayed in numerous retail sales establishments seems to this Court to be a textbook example of a claim of this nature so long as the use of Harbin's likeness was without her permission." *Id*.

The defendants in this case argue that comment d to Section 652C regarding the "incidental use of name or likeness" doctrine bars the plaintiff's claim. Comment d states:

> *d. Incidental use of name or likeness.* . . . No one has the right to object merely because his name or his appearance is brought before the public, since neither is in any way a private matter and both are open to public observation. **It is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial** *or other values associated with the name or the likeness* **that the right of privacy is invaded.** The fact that the defendant is engaged in the business of publication, for example of a newspaper, out of which he makes or seeks to make a profit, is not enough to make the incidental publication a commercial use of the name or likeness. Thus a newspaper, although it is not a philanthropic institution, does not become liable under the rule stated in this Section to every person whose name or likeness it publishes.

Restatement (Second) of Torts § 652C, comment d (1977) (emphasis added).

There is nothing in comment d that bars the plaintiff's claim in this case. The court concludes that for the purposes of the defendants Rule 12(b)(6) motion, the plaintiff has stated a claim for misappropriation of her likeness for commercial gain. It is undisputed that the movie *Borat* was a

13

commercial enterprise, shown in theaters across the United States and Europe, and is now widely distributed in DVD format. It is also undisputed that the defendants did not obtain the plaintiff's explicit permission to be featured in any other film except a "religious documentary" that would be shown in a foreign country – not a major motion picture shown across the nation and Europe.

The defendants argue that the film *Borat* is protected against the plaintiff's claims by the First Amendment citing *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501-02 (1952) in which the U.S. Supreme Court concluded that "expression by means of motion pictures is included within the free speech and free press guaranty of the First and Fourteenth Amendments." However, the decision in *Wilson* did not involve an invasion of privacy claim by a private citizen. For the purposes of the instant Rule 12(b)(6) motion, the court concludes that the defendants' did not demonstrate that the First Amendment bars the plaintiff's claim of misappropriation of likeness for commercial gain. In any event, the nature of the film *Borat* is different from a purely fictional work since, although the viewer is aware that the plot itself is fictional and that the characters of Borat and his producer are fictional, the viewer is also aware that the vast majority, if not all, of the other people featured in the movie are non-public figures who are not actors and are likely unaware that Borat is not a Kazakhstani reporter filming a documentary for Kazakhstan. Such details would need to be developed during discovery.

### III. CONCLUSION

For the reasons discussed above, the defendant's motion to strike [14] the plaintiff's exhibits to their response to the defendants' motion to dismiss should be granted. The defendants' motion to dismiss should be granted insofar as they have demonstrated that the plaintiff fails to state a claim for the invasion of privacy torts based on intrusion upon seclusion and disclosure of private facts.

The defendant's motion to dismiss should be denied insofar as they have not demonstrated that the plaintiff cannot state a claim for misappropriation of likeness for commercial gain and false light. Furthermore, since the defendants did not demonstrate that the plaintiff has failed to state a claim for gross negligence, that claim also remains. Accordingly, an Order shall issue forthwith,

**THIS DAY** of August 22, 2007.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE