# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# DELTA DIVISION

**ELLEN JOHNSTON,**                                                         **PLAINTIFF,**

**VS.**                                                  **CIVIL ACTION NO. 2:07CV042-P-B**

**ONE AMERICA PRODUCTIONS, INC.;**
**TWENTIETH-CENTURY FOX FILM**
**CORPORATION; JOHN DOES 1 AND 2,**                           **DEFENDANTS.**

## ORDER

This matter comes before the court upon the defendants' motion to reconsider [22] the court's August 22, 2007 Opinion and Order granting in part and denying in part the defendant's Rule 12(b)(6) motion to dismiss. After due consideration of the motion and the responses filed thereto, the court finds as follows, to-wit:

The motion to reconsider should be granted regarding the apparent gross negligence claim asserted in the Complaint. In her response in opposition to the instant motion, the plaintiff concedes that she did not intend to levy a separate cause of action for gross negligence although she used that term in the Complaint.

The motion to reconsider should also be granted for the purposes of clarifying the court's ruling on the potential questions of fact presented by the plaintiff's false light claim. In its August 22, 2007 Opinion, the court concluded:

> Considering the elements of the tort of false light invasion of privacy and the Restatement comments quoted above, the court concludes that in light of the standards for Rule 12(b)(6) motions to dismiss, it is beyond mere speculation that there are jury questions of (1) whether the Pentecostal scene portraying the plaintiff waiving her arms in religious praise in response to Borat's apparent conversion would be highly objectionable to a reasonable person in the plaintiff's position, *See* Illustration 9 to comment *c, supra,* such that a person in the plaintiff's position would

1

believe others would believe she willingly participated in a mocking of her religion; and (2) whether "the defendant [knew] that the plaintiff, as a reasonable [person], would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity," *See* comment *c*, *supra*.

The defendants argue in their motion to reconsider that the court ignored the principle stated in *Prescott v. Bay St. Louis Newspapers, Inc*., 497 So.2d 77, 81 (Miss. 1986) that "[t]he words used must have been clearly directed at the plaintiff (and) the [false light] must be clear and unmistakable from the words themselves and not the product of innuendo, speculation or conjecture."

The aforementioned language in its original Opinion was not an attempt to outline each and every question of fact in this early state of litigation that *could* ultimately arise after the completion of discovery. In any event, for the purposes of clarity and to assuage the defendants' concern, the court concludes that for the purposes of Rule 12(b)(6) analysis, a third question of fact regarding the false light claim would also include whether the false light was clear and unmistakable from the scene itself and not the product of innuendo, speculation, or conjecture. This all assumes, of course, that the evidence developed in discovery is sufficient to create genuine issues of fact in all three regards. The court reminds the parties that the issue at hand in its August 22, 2007 Opinion was not whether there were genuine issues of material fact, but rather whether the plaintiff's claims rose above mere speculation pursuant to *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007) and Fed. R. Civ. P. 12(b)(6).

The motion to reconsider is denied on all other respects.

The defendants argue that the "District Court's own description of the film demonstrates that the context, rather than placing Plaintiff in a false light, makes it virtually impossible to give the scene the interpretation that Plaintiff urges and the District Court accepts." They argue further that

2

regardless of what the plaintiff "believes others would believe," no reasonable person viewing the scene in context would understand that Johnston was doing anything other than what the film depicts. However, how the court interpreted the film in its Rule 12(b)(6) Opinion regarding what viewers of the film are likely to believe is not a finding of fact and is not dispositive. Without regard to how the court itself interpreted how a viewer might interpret the film, reasonable persons can differ in how they interpret what is most definitely not a common format for a major film. There are indeed many reasonable Americans, especially those who are of an older generation, who are not familiar with the type of humor/satire that is depicted in the film *Borat*.

Nevertheless, the court agrees with the defendants that an interlocutory appeal is warranted because there is "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

Neither Mississippi law nor applicable Fifth Circuit precedent clearly delineates all of the contours of the applicability of the plaintiff's misappropriation claim to the unique film and circumstances involved in this case. Although this case is in an early stage and discovery has not yet been completed, the court agrees that there is an open question in Mississippi whether an invasion of privacy/misappropriation claim is confined to commercial advertising. While it is true that the decisions in *Candebat v. Flanagan*, 487 So.2d 207 (Miss. 1986) and *Harbin v. Jennings*, 734 So.2d 269 (Miss. Ct. App. 1999) involved commercial advertising, neither case clearly confined a misappropriation claim to commercial advertising.

In *Candebat*, the Mississippi Supreme Court observed that the pleadings alleged that the defendants "either caused to be or did appropriate the names of Mr. James Candebat, Sr. and Mrs.

3

Irene Candebat for the **commercial advantage** of the corporate defendant ... to further the mercantile goals of aggrandize and enrich [said] defendant ... without the knowledge or express consent of the Candebats," and concluded that "[t]here is no dispute as to the existence of the cause in Mississippi." 487 So.2d 210 (emphasis added). The Court in *Candebat* did not implicitly or explicitly confine "commercial advantage" to commercial advertising.

Similarly, though the Mississippi Court of Appeals in *Harbin* observed that "[t]he use of Harbin's photograph in thousands of picture frames to be widely distributed and displayed in numerous retail sales establishments seems to this Court to be a textbook example of a [misappropriation] claim ... so long as the use of Harbin's likeness was without her permission," the Court of Appeals did not explicitly confine misappropriation to commercial advertising when it wrote that "[o]ne of the classic forms of such invasion of privacy is the appropriation, without consent, of the likeness of another for use in a commercial enterprise." 734 So.2d at 272.

As this court observed above and in its original Opinion, the Courts in *Candebat* and *Harbin* referenced Section 652C of the Restatement (Second) of Torts in discussing the tort of misappropriation. Nothing in the all four of the comments to Section 652C confine misappropriation to commercial advertising.

Comment *a* observes that "[t]he interest protected by the rule stated in this Section is the interest of the individual in the exclusive use of his own identity, in so far as it is represented by his name or likeness, and in so far as the use may be of **benefit to him or to others**." (emphasis added)

Comment *b* to Section 652C states:

> *b. How invaded.* The common form of invasion of privacy under the rule here stated is the appropriation and use of the plaintiff's name or likeness to advertise the defendant's business or product, or **for some similar commercial purpose**. Apart

> from statute, however, the rule stated is not limited to commercial appropriation. It applies also when the defendant makes use of the plaintiff's name or likeness for his own purposes and benefit, even though the use is not a commercial one, and even though the benefit sought to be obtained is not a pecuniary one. Statutes in some states have, however, limited the liability to commercial uses of the name or likeness.

This comment does not confine misappropriation to commercial advertising, though it states that misappropriation claims commonly involve commercial advertising. In fact, comment *b* recognizes that commercial misappropriation can come in other forms..

In comment *c* to Section 652C, the Restatement provides that "[i]n order that there may be liability [for misappropriation], the defendant must have appropriated to **his own use or benefit** the ... values of the plaintiff's name or likeness." (emphasis added).

Comment *d* states that "[i]t is only when the publicity is given for the purpose of appropriating **to the defendant's benefit** the commercial or other values associated with the name or likeness that the right of privacy is invaded." (emphasis added).

Nothing in comments *a*, *b*, *c*, or *d* confine the phrases "benefit to him or others," "for some similar commercial purpose," "to his own use or benefit," or "to the defendant's benefit" to commercial advertising.

The defendants correctly point out that although *Matthews v. Wozencraft*, 15 F.3d 452 (5th Cir.1994) involved Texas law, there was no specific Texas statute for misappropriation. Rather, *Matthews* involved a Texas common law claim for misappropriation. The defendants argue that the same elements as discussed in *Matthews* for misappropriation would apply in Mississippi. However, the defendants have pointed to no Mississippi authorities that use the three Texas common law elements for misappropriation identified in *Matthews*. Rather, as discussed above, the Mississippi Supreme Court and Court of Appeals cite to the Restatement for the elements of a misappropriation

5

claim. *See Candebat*, 487 So.2d at 210 ("There is no dispute as to the existence of the cause [of action for the "appropriation of another's identity for an unpermitted use"] in Mississippi."); *Harbin*, 734 So.2d at 27 ("Mississippi recognizes the tort of intentional invasion of privacy. ... One of the classic forms of such invasion of privacy is the appropriation, without consent, of the likeness of another for use in a commercial enterprise."). With regard to misappropriation, the decisions in *Candebat* and *Harbin* cite *Deaton v. Delta Democrat Publishing Company*, 326 So.2d 471, 473 (Miss. 1976), which in turn cites the Restatement (Second) of Torts.

Section 652C of the Restatement provides that with regard to a misappropriation claim: "One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for the invasion of his privacy."

In other words, the defendants have cited no authority demonstrating that Mississippi uses the three elements of a Texas common law misappropriation claim cited in *Matthews*. Rather, the scant Mississippi law on the matter indicates that the Mississippi appellate courts would use the language contained in the Restatement.

The defendants also maintain that the court failed to point out that the Court in *Matthews* cites comment *b* to Section 652C's "or for some similar purpose" language and dismissed Matthews' misappropriation claim based on facts similar to those here. The facts in *Matthews*, however, are readily distinguishable. In *Matthews*, a former undercover narcotics officer asserted, *inter alia,* a misappropriation claim against his ex-wife and former partner regarding a novel she published regarding their exploits together. Although the novel stated it was fictional, Matthews maintained that one of the main characters clearly portrayed him. The Fifth Circuit Court of Appeals held that Matthews could not recover under Texas' common law claim for

6

misappropriation for several reasons. First, the subject of the novel was corruption of law enforcement officers which the Court held was a matter of public concern. 15 F.3d at 436. Second, Matthews' willingness to discuss the book with the media after it was published made him a public figure. *Id*. Third, the Court ruled that "Texas law does not recognize a cause of action for appropriation of one's life story and ... if it did, there would be an exception for biographies and 'fictionalized biographies.'" *Id*. at 437. Fourth, the Court concluded that "[t]he term 'likeness' does not include general incidents from a person's life, especially when fictionalized." *Id*. at 438. Fifth, "most of the material facts are a matter of public record because of the highly publicized trial...." *Id*. at 439.

None of these aspects are at issue in the case at bar – there is nothing of public concern involved, Johnston is not a public figure nor has she done anything to render herself a public figure, her life story is not involved in the subject film, her likeness (*i.e.*, her image) is in fact involved because she is portrayed in a film and not in a non-visual novel, and there was no public trial or controversy involved in this case.

The defendants also cite the Florida Supreme Court's decision in *Tyne v. Time Warner Entertainment Company, L.P.*, 901 So.2d 802 (Fla. 2005) in support of their position. Having considered *Tyne*, the court respectfully disagrees with the reasoning employed in that case. The Eleventh Circuit Court of Appeals certified the question to the Florida Supreme Court of whether a cause of action under Florida's misappropriation statute is confined to commercial advertising. The Florida Supreme Court concluded that it was so confined. However, the plain language of Florida's misappropriation statute – a statute that Mississippi does not have – states: "No person shall publish, print, display or otherwise publicly use for purposes of trade **or for any commercial**

7

***or* advertising purpose**, the name, portrait, photograph, or other likeness of any natural person without ... express written or oral consent to such use...." Fla. Stat. § 540.08(1) (emphasis added). Furthermore, the U.S. District Court from whence the case originated concluded that "[a] motion picture is not .. in and of itself, a 'commercial purpose.'" *Tyne*, 901 So.2d at 805 (quoting *Tyne v. Time Warner Entertainment Company, L.P.*, 204 F.Supp.2d 1338, 1341 (M.D.Fla. 2002)). The district court in *Tyne*, however, based this conclusion upon the Florida Court of Appeals' decision in *Loft v. Fuller*, 408 So.2d 619 (Fla. Dist. Ct. App. 1981), a decision that the Mississippi appellate courts have not made.

In any event, it seems a matter of common sense to conclude that a motion picture is a commercial enterprise and has a commercial purpose. The purposes of a major motion picture may include intangibles such as providing entertainment or social satire, but they certainly are not free to produce nor are they free to watch. And it is certainly reasonable to conclude that, in theory, a motion picture, like any other commercial enterprise, could appropriate someone's name or likeness in furtherance of the commercial enterprise without that person's permission.

The U.S. Supreme Court in *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501 (1932) observed: "That books, newspapers, and magazines are published and sold for profit does not prevent them from being a form of expression whose liberty is safeguarded by the First Amendment." The Court concluded that "expression by means of motion pictures is included within the free speech and free press guaranty of the First and Fourteenth Amendments." *Id*. at 502. However, the Court also wrote:

> To hold that liberty of expression by means of motion pictures is guaranteed by the First and Fourteenth Amendments, however, is not the end of our problem. It does not follow that the Constitution requires absolute freedom to exhibit every motion

> picture of every kind at all times and all places. That much is evident from the series of decisions of this Court with respect to other media of communication of ideas. Nor does it follow that motion pictures are necessarily subject to the precise rules governing any other particular method of expression. Each method tends to present its own peculiar problems. But the basic principles of freedom of speech and the press, like the First Amendment's command, do not vary. Those principles, as they have frequently been enunciated by this Court, make freedom of expression the rule. There is no justification in this case for making an exception to that rule.

*Id.* at 502-503.

As this court has previously maintained, unlike the massive majority of mainstream films that the public has viewed, the film *Borat* is not simply an ordinary expressive, fictional work with fictional actors. Nor is it a pure documentary. Rather, the film is a unique mixture of documentary and fiction which blurs the boundaries of both genres to such a degree that many reasonable viewers could question whether or not the majority of people portrayed in the film are willing participants. It is this nature of the film that does not bring it squarely in the realm of *Joseph Burstyn, Inc. v. Wilson*.

Unlike the situation in *Wilson* where a government agency rescinded a license for public exhibition of a motion picture, the circumstances in this case involve a battle between the defendants' assertion of their free speech rights and the plaintiff's right to privacy. As the court has already concluded, the defendants' right to free speech is not unfettered and is validly subject to the plaintiff's invasion of privacy claims of misappropriation and false light.

In granting the defendants' motion to certify an interlocutory appeal, the court respectfully suggests that the Fifth Circuit Court of Appeals certify the question to the Mississippi Supreme Court of whether an invasion of privacy/misappropriation claim is confined to commercial advertising in Mississippi. The other question presented is whether or not the U.S. Supreme Court's decision in

*Wilson* prevents the plaintiff from asserting both her misappropriation and false light claims.

**IT IS THEREFORE ORDERED AND ADJUDGED** that:

(1) The defendants' motion to reconsider [22] is **GRANTED IN PART AND DENIED IN PART**; specifically,

(2) The motion is granted insofar as any deliberate or inadvertent gross negligence claim contained in the Complaint is dismissed with prejudice;

(3) The motion is also granted regarding the additional requirement for a false light claim as explained above;

(4) The motion to reconsider is denied on all other respects; and

(5) The defendants' alternative motion to certify an interlocutory appeal pursuant to 28 U.S.C. 1292 is granted.

**SO ORDERED** this the 2nd day of October, A.D., 2007.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE